# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CODY VAUGHN and GLADYS COSTON-GIBSON, individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | Case No: |
| v. | : : | |
| THE HERSHEY COMPANY, a Delaware corporation, | : : : | |
| Defendant. | : : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT
## WITH JURY DEMAND

Plaintiffs, Cody Vaughn and Gladys Coston-Gibson ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, hereby bring this Collective and Class Action Complaint against The Hershey Company ("Defendant") and allege as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated employees of Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Illinois Minimum

Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*, the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq*, and common law.

2.      Defendant is a multinational confectionery company.[1]

3.      Defendant employs and employed thousands of hourly workers, including Plaintiffs, to facilitate its operations.

4.      Plaintiffs are and were employed at one of Defendant's manufacturing facilities across the United States, including, but not limited to Lancaster, Pennsylvania; Stuarts Draft, Virginia; Bluffton, Indiana; Edgerton, Kansas; Plymouth, Indiana; Hazleton, Pennsylvania; Memphis, Tennessee; Goodyear, Arizona; Lenexa, Kansas; Hershey, Pennsylvania; Robinson, Illinois; and Lawrence, Kansas.[2]

5.      Defendant required Plaintiffs to wear company-issued or mandated uniforms and protective clothing during their work shifts to comply with company policies, as well as food-safety and health regulations.

6.      The company-issued or mandated protective clothing and safety gear included uniforms, safety shoes, safety glasses or goggles or face shield, safety

---

[1] https://www.thehersheycompany.com/en_us/home/about-us.html (last visited July 28, 2025).

[2] https://www.thehersheycompany.com/en_us/home/about-us/the-company/plant-locations.html (last visited July 28, 2025).

gloves, aprons, hearing protection and sometimes head protection.[3]

7.     Defendant required Plaintiffs and the hourly employees to change into ("don") and change out of ("doff") personal protective equipment ("PPE") before and after their work shifts in designated locations at Defendant's manufacturing facilities.

8.     The process of donning and doffing the PPE was compensable because Defendant required Plaintiffs to don and doff at the worksite and because government regulations required Plaintiffs to wear the PPE during their work shifts and to don and doff at the worksite.

9.     Additionally, the PPE was an integral and indispensable part of the Plaintiffs' principal work activities, as the Plaintiffs could not safely or lawfully perform their work activities without wearing the PPE.

10.     Plaintiffs spent substantial amounts of time each day donning and doffing the PPE and walking to and from the locker rooms and the production areas before and after their work shifts.

11.     Defendant, however, did not pay the Plaintiffs for all of this time. Instead, Defendant only paid Plaintiffs based on their "punch in" and "punch out" times. As Plaintiffs were required to don their PPE before they "punched in," and

---

[3] The exact required PPE may vary slightly from department to department and facility to facility, however, the PPE required was either the same or substantially similar across all departments and facilities.

required to be fully dressed and ready to work at the beginning of their scheduled shift time, and likewise, doff their PPE after they "punched out," Plaintiffs were not paid for the time they spent donning and doffing the PPE. All of the time Plaintiffs spent donning and doffing the PPE was "off the clock."

12.    Consequently, Defendant failed to pay Plaintiffs for all compensable time, including overtime.

13.    Defendant required Plaintiffs to don and doff the same or substantially similar PPE, and Defendant compensated Plaintiffs in the same or similar manner.

14.    The individuals Plaintiffs seek to represent in this action are current and former hourly employees who are similarly situated to each other in terms of their positions, job duties, pay structure, and claims regarding Defendant's violations of federal and state law (hereinafter collectively referred to as "hourly employees").[4]

15.    Defendant knew or could have easily determined how long it took Plaintiffs and the hourly employees to complete their donning and doffing activities, and Defendant could have properly compensated Plaintiffs and hourly employees for this pre- and post-shift work but deliberately chose not to.

16.    Defendant's practice of failing to compensate Plaintiffs and the hourly employees for all hours worked violated their rights under the FLSA.

---

[4] Defendant's aforementioned employees held a number of different job titles, including, but not limited to: Production Operator and Weight Controller.

17.    Defendant is liable for its failure to pay Plaintiffs at the correct overtime rate for all hours worked in excess of 40 per week.

18.    Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock and uncompensated work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

19.    Plaintiffs seek a declaration that their rights, and the rights of the putative collective/class members were violated as well as an award of unpaid wages, liquidated damages, injunctive and declaratory relief, attendant penalties, and attorneys' fees and costs to make them whole for damages they suffered, and to ensure that Defendant will not subject them or future workers to such illegal conduct in the future.

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

21.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under

the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22.    The FLSA applies in this case on an enterprise basis because Defendant's annual sales exceed $500,000, and Defendant has more than two employees.    The FLSA applies in this case on an individual basis because Defendant's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce.

23.    This Court has supplemental jurisdiction over Plaintiffs' state and common law claims under 28 U.S.C. § 1367 because the state and common law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

24.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

25.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Pennsylvania, employs individuals within the state of Pennsylvania, is registered with Pennsylvania Secretary of State, and maintains its principal place of business in Pennsylvania.

## VENUE

26.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this District.

27.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## **PARTIES**

28.    Plaintiff Cody Vaughn is an Illinois resident who worked for Defendant as an hourly employee at Defendant's Robinson, Illinois facility from approximately September 2024 through March 2025. Plaintiff Vaughn's consent to join form is attached as **Exhibit A**.

29.    Plaintiff Gladys Coston-Gibson is a Pennsylvania resident who worked from Defendant as an hourly employee at Defendant's Hazleton, Pennsylvania facility from approximately July 2020 through April 2024. Plaintiff Colston-Gibson's consent to join form is attached as **Exhibit B**.

30.    Defendant employed additional putative Collective and Class Members as hourly employees in Arizona, Illinois, Indiana, Kansas, Pennsylvania, Tennessee, Virginia, and potentially other states during the past three years, and their consent forms will also be filed in this case.

31.    Defendant is a Delaware corporation with its registered office at 19 East Chocolate Ave., Hershey, Pennsylvania 17033.

32.    Defendant's registered agent for service of process is CT Corporation System, 600 North 2nd St., Ste. 401, Harrisburg, Pennsylvania 17101.

## STATEMENT OF FACTS

33.    Defendant employs and employed thousands of hourly workers, including Plaintiffs, to facilitate its operations.

34.    Plaintiffs are and were employed at one of Defendant's manufacturing facilities across the United States, including, but not limited to Lancaster, Pennsylvania; Stuarts Draft, Virginia; Bluffton, Indiana; Edgerton, Kansas; Plymouth, Indiana; Hazleton, Pennsylvania; Memphis, Tennessee; Goodyear, Arizona; Lenexa, Kansas; Hershey, Pennsylvania; Robinson, Illinois; and Lawrence, Kansas.[5]

35.    Defendant employed Plaintiff Vaughn as an hourly "Production Operator" and Plaintiff Colston-Gibson as an hourly "Weight Controller."

36.    Plaintiff Vaughn worked at Defendant's location at 1401 W. Main St., Robinson, Illinois 62454.

37.    Plaintiff Colson-Gibson worked at Defendant's location at 6 Scotch Pine Dr., Hazle Township, Pennsylvania 18202.

38.    As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all hours worked.

---

[5] https://www.thehersheycompany.com/en_us/home/about-us/the-company/plant-locations.html (last visited July 28, 2025).

## Off the Clock Work/Donning and Doffing

39.    Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in their first principal activity and before they finish their last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

40.    The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

41.    Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal

activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

42.    More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.[6]

43.    Defendant required Plaintiffs and the hourly employees to change into

---

[6] In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. *See, e.g.*, *Franklin v. Kellogg Co.*, 619 F.3d 620 (6th Cir. 2010) (holding that donning and doffing food protective clothing and safety gear was "integral and indispensable" to the principal activity of the employment"); *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004) (agreeing with district court "that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities"); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (holding donning and doffing protective gear was "integral and indispensable" to plaintiffs' principal activities of employment).

("don") and change out of ("doff") company-issued PPE before and after their work shifts in the designated location at Defendant's facility. Before their scheduled shifts, and before beginning production activities, Plaintiffs and the hourly employees were required to put on their company-issued PPE, including uniforms, safety shoes, safety glasses or goggles or face shield, safety gloves, aprons, hearing protection and sometimes head protection.

44.    Defendant required Plaintiffs to don and doff the PPE before and after the work shifts in designated locations (generally locker rooms) at Defendant's facilities.

45.    Defendant prohibited Plaintiffs from donning or doffing some or all of their PPE at home.

46.    Defendant prohibited Plaintiffs from taking PPE home with them or otherwise removing PPE from Defendant's facilities.

47.    Defendant furnished Plaintiffs with laundered and/or new protective clothing each workday.

48.    Defendant prohibited Plaintiffs from leaving the locker room and walking to their work stations without wearing PPE.

49.    Defendant prohibited Plaintiffs from leaving the facilities without doffing the PPE and changing into different footwear.

50.    Defendant required Plaintiffs and the hourly employees to wear PPE

throughout their shifts in order to protect the health and safety of their employees processing and packaging their products, and their customers.

51.    The pre-shift donning process took Plaintiffs and the hourly employees substantial time on a daily basis, ranging from 5 to 10 minutes per shift, all before the beginning of their scheduled shifts, and before they were clocked into Defendant's timekeeping system.

52.    The post-shift doffing process took Plaintiffs and the hourly employees substantial time on a daily basis, ranging from 5 to 10 minutes per shift, and happened after their scheduled shifts had ended, and after they were no longer clocked into Defendant's timekeeping system.

53.    Consequently, Plaintiffs and the other hourly employees performed uncompensated, off-the-clock work in the range of 10 to 20 minutes per shift.

54.    Defendant, however, did not pay Plaintiffs and the hourly employees for this compensable time. Instead, Defendant only paid Plaintiffs and the hourly employees based on the time their scheduled shift started and the time their scheduled shift ended. Because Plaintiffs and the hourly employees were required to don their PPE prior to the start of their shift time, and doff their PPE after the end of their shift time, Plaintiffs and the hourly employees were not paid for their time beginning with their first principal activity of the workday and continuing through their last principal activity of the workday.

55.    Defendant knew or could have easily determined how long it took Plaintiffs and the hourly employees to complete their donning and doffing, and Defendant could have properly compensated Plaintiffs and the hourly employees for this pre- and post-shift work but deliberately chose not to.

### Off-the-Clock Work "Gap Time"

56.    "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

57.    Plaintiffs and the hourly employees regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

58.    During the weeks that Plaintiffs and the hourly employees did not work over 40 hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, for which the Defendant directly benefitted.

59.    In approximately September 2024, Defendant offered Plaintiff Vaughn the opportunity to work for Defendant as a Production Operator.

60.    In approximately July 2020, Defendant offered Plaintiff Coston-Gibson the opportunity to work for Defendant as a Weight Controller.

61.    In consideration for Plaintiffs' work as hourly production employees, Defendant promised to pay Plaintiffs a specific hourly wage for each hour worked for Defendant.

62.    In approximately September 2024, Plaintiff Vaughn accepted Defendant's offer of employment and began working for Defendant, creating a valid contract between Defendant and Plaintiff Vaughn whereby Defendant was obligated to pay Plaintiff Vaughn his regular hourly rate of pay for each hour worked for Defendant, including the donning/doffing described herein.

63.    In approximately July 2020, Plaintiff Coston-Gibson accepted Defendant's offer of employment and began working for Defendant, creating a valid contract between Defendant and Plaintiff Coston-Gibson whereby Defendant was obligated to pay Plaintiff Coston-Gibson her regular hourly rate of pay for each hour worked for Defendant, including the donning/doffing described herein.

64.    Throughout their employment with Defendant as hourly employees, Plaintiffs performed all of the work required by Defendant, including the donning/doffing described herein. In performing this work, Plaintiffs fulfilled all of their duties under the contract.

65.    However, throughout Plaintiffs' entire employment with Defendant,

Defendant repeatedly and systematically breached the contract by not paying Plaintiffs their promised hourly rate of pay for the donning/doffing described herein.

66.    Defendant's failure to pay Plaintiffs for each hour of work they performed and that was required of them as an hourly production employee, was a material breach by Defendant of the parties' contract.

67.    Because of Defendant's breaches, Plaintiffs were deprived of wages owed to them under the contract, including unpaid "gap time" wages.

68.    Upon information and belief, all the other hourly employees who worked for Defendant had a similar valid contract with Defendant.

69.    Upon information and belief, Defendant repeatedly and systematically breached its contracts with all the hourly employees it employed in the same way that it breached its contracts with Plaintiffs.

70.    Defendant's contractual promises to pay Plaintiffs and other hourly employees their promised hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to the Plaintiffs.

71.    Plaintiffs and the hourly employees are owed wages at their promised hourly wage rates for the time that they worked off-the-clock during their employment with Defendant, including unpaid "gap time" wages.

72.    Plaintiffs and the hourly employees earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to

Plaintiffs and the hourly employees no later than the pay day for the period in which the off-the-clock work was performed.

73.    The fact that Defendant deliberately chose not to compensate Plaintiffs and the hourly employees for this work, and that the off-the-clock work was performed before Plaintiffs' and the hourly employees' scheduled shifts, did not in any way relieve Defendant of its contractual obligations to pay the Plaintiffs and the hourly employees for this time.

74.    Defendant was contractually obligated to pay Plaintiffs and the hourly employees their promised rates of pay for *all hours worked*, including hours worked before and after their scheduled work shifts, because that is what the parties agreed to in their contract.

75.    At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and the hourly employees in connection with the above-described donning/doffing and was aware it was occurring off the clock and without compensation.

76.    Plaintiffs' and the hourly employees' donning/doffing activities conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their shift and that Defendant saved the funds it would have spent had it paid Plaintiffs and the hourly employees for that work.

77.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and the hourly employees.

78.    At all relevant times, Defendant was able to track the amount of time Plaintiffs and the hourly employees spent in connection with the donning/doffing activities. However, Defendant failed to do so and failed to pay Plaintiffs and the hourly employees for all of the work they performed.

79.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the hourly employees in order to pressure them into performing the donning/doffing activities without pay.

80.    Defendant expressly trained and instructed Plaintiffs and the hourly employees to begin performing the above-described donning/doffing activities outside of their scheduled shift times, to ensure they were prepared to engage in their production activities prior to the start of their shifts.

81.    At all relevant times, Defendant's policies and practices deprived Plaintiffs and the hourly employees of wages owed for the donning/doffing activities they performed. Because Plaintiffs and the hourly employees regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

82.    Defendant knew or should have known that the time spent by Plaintiffs

and the hourly employees in connection with the donning/doffing activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

83.    Despite knowing Plaintiffs and the hourly employees performed work before and after their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre- and post-shift work and instead suffered and permitted it to happen.

84.    Depending on when the uncompensated work was performed, unpaid wages related to the pre- and post-shift work described herein are owed to Plaintiffs and the hourly employees at the FLSA mandated overtime premium or at their standard rate of pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85.    Pursuant to 29 U.S.C § 216(b), Plaintiffs bring this action on behalf of themselves and on behalf of:

*All current and former hourly employees who worked for Defendant at any of its manufacturing and/or production facilities during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

86.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated production employees.

87.     Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

88.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid for all hours worked.

89.     Defendant assigned and/or was aware of all of the work that Plaintiffs and the FLSA Collective performed.

90.     As part of their regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

     a.  Willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, for all hours worked; and

     b.  Willfully failing to record all of the time that their employees, including Plaintiffs and the FLSA Collective, worked for the benefit of Defendant.

91.     Defendant is aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

92.    Defendant's unlawful conduct was widespread, repeated, and consistent.

93.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

94.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues - the amount of uncompensated pre-shift donning do not vary substantially among the proposed FLSA Collective members.

95.    Many similarly situated current and former production employees were underpaid in violation of the FLSA and would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

96.    Court-authorized notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

97.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

98.     Upon information and belief, there are thousands of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS

99.     Plaintiff Coston-Gibson brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former hourly employees who worked for Defendant at any of its manufacturing and/or production facilities during the applicable statute of limitations period in Pennsylvania.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff Coston-Gibson reserves the right to amend the putative class definition if necessary.

100.     This action is properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

101.     The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical. Plaintiff Coston-Gibson reasonably estimates there are hundreds, if not thousands, of Rule 23 Pennsylvania Class members. Rule 23 Pennsylvania Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

102.   There is a well-defined community of interest among Rule 23 Pennsylvania Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class. These common legal and factual questions include, but are not limited to, the following:

    a. Whether the time Rule 23 Pennsylvania Class members spend on pre- and post-shift activities "off-the-clock" for each shift is compensable time;

    b. Whether the Rule 23 Pennsylvania Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof.

103.   Plaintiff Coston-Gibson's claims are typical of those of the Rule 23 Pennsylvania class in that she and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of Defendant's common and systematic payroll policies and practices. Plaintiff Coston-Gibson's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Pennsylvania Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania class members.

104.   Plaintiff Coston-Gibson will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Coston-Gibson nor her counsel have interests that are contrary to, or

conflicting with, the interests of the Rule 23 Pennsylvania Class.

105.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

106.   This case will be manageable as a class action. Plaintiff Coston-Gibson and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

107.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

108.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class

certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

109.   Plaintiff Vaughn brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former hourly employees who worked for Defendant at any of its manufacturing and/or production facilities in Illinois during the applicable statute of limitations period.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff Coston-Gibson reserves the right to amend the putative class definition if necessary.

110.   This action is properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

111.   The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff Vaughn reasonably estimates there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

112.   There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether the time Rule 23 Illinois Class members spend on pre- and post-shift activities "off-the-clock" for each shift is compensable time;

b.  Whether the Rule 23 Illinois Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof.

113.  Plaintiff Vaughn's claims are typical of those of the Rule 23 Illinois class in that he and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Defendant's common and systematic payroll policies and practices. Plaintiff Vaughn's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Illinois class members.

114.  Plaintiff Vaughn will fully and adequately protect the interests of the Rule 23 Illinois Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Vaughn nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

115.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, inter alia, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and

federal courts throughout the nation.

116.   This case will be manageable as a class action. Plaintiff Vaughn and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

117.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

118.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

119.   Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly employees who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

120.   The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

121.   There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions include, but are not limited to, the following: whether Defendant's non-payment of wages for all compensable time unjustly enriched Defendant.

122.   Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

123.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class, and they have retained counsel who are qualified and experienced

in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

124.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

125.   This case will be manageable as a Rule 23 Nationwide Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

126.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

127.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to

Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

128.   Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

129.   Defendant is an employer within the meaning of 29 U.S.C § 203(d).

130.   Plaintiffs are employees within the meaning of 29 U.S.C C 203(e).

131.   At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiffs and all putative collective members for all hours worked, in violation of the FLSA.

132.   The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

133.   As a result of Defendant's unlawful policy, in workweeks that the Plaintiffs and other employees worked more than forty (40) hours, they were deprived of overtime wages in violation of the FLSA.

134.   Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

135.   Plaintiffs and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their backpay.

136.   Plaintiffs and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

### COUNT II
### (On Behalf of the Rule 23 Pennsylvania Class)
### VIOLATIONS OF THE PENNSYLVANIA MINIMUM WAGE ACT, 43 P.S. §§ 333.101, *et seq.* – FAILURE TO PAY WAGES

137.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

138.   Defendant is an employer covered by the PMWA, and Plaintiffs and the class members are employees entitled to the PMWA's protections.

139.   The PMWA requires Defendant to pay Plaintiff and the other class members minimum wages and overtime premium compensation "not less than one and one-half times" the regular rate of pay for all hours worked over 40 per week. *See* 43 P.S. §333.104(c).

140.   Defendant violated the PMWA by failing to pay Plaintiff and other class members minimum wages and overtime premium compensation (during weeks in which such time was worked above the 40 hour overtime threshold) for time associated with the off-the-clock tasks described above.

141.   As discussed herein, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Pennsylvania Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties

Plaintiff and the Rule 23 Pennsylvania Class members performed on Defendant's behalf.

142.    Evidence of this contract includes Defendant's letters offering employment, the employee handbook, pay statements, and other documentary evidence in Defendant's possession.

143.    Upon information and belief, each Rule 23 Pennsylvania Class member, including Plaintiff, was contractually entitled to a minimum hourly rate within the applicable period, in addition to applicable overtime premium.

144.    Plaintiff and every other Rule 23 Pennsylvania Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, and post-shift work described herein.

145.    Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Pennsylvania Class for all wages (regular and overtime) owed.

146.    Plaintiff and the Rule 23 Pennsylvania Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendant failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Pennsylvania Class.

147.    Defendant violated the PMWA by regularly and repeatedly failing to

compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the work activities described in this Complaint.

148.   As a result, Plaintiff and the Rule 23 Pennsylvania Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Pennsylvania Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the PMWA at an amount to be proven at trial.

### COUNT III
### (On Behalf of the Rule 23 Illinois Class)
### VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"), §§ 820 ILCS 105/1, *et seq*
### FAILURE TO PAY OVERTIME WAGES

149.   Plaintiff Vaughn re-alleges and incorporates all previous paragraphs herein.

150.   At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiff Vaughn and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

151.   Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiff Vaughn worked more than forty (40) hours, he was entitled to be compensated at a rate of one and one-half times his regular hourly rate of pay.

152.   In workweeks where Plaintiff Vaughn and other Rule 23 Illinois Class members worked over 40 hours, Defendant failed to compensate Plaintiff Vaughn and the Rule 23 Illinois Class members for the unpaid off-the-clock work time.

153.   Defendant's failure and refusal to pay overtime wages for all hours worked in excess of 40 per week was a violation of the provisions of the IMWL, 820 ILCS § 105/4(a).

154.   820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

155.   Plaintiff Vaughn and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**COUNT IV**
**(On Behalf of the Rule 23 Illinois Class)**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),**
**§§ 820 ILCS 105/1, *et seq***
**FAILURE TO PAY MINIMUM WAGES**

156.   Plaintiff Vaughn re-alleges and incorporates all previous paragraphs herein.

157. At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiff Vaughn and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

158. Pursuant to 820 ILCS § 105/4, Plaintiff Vaughn and the Rule 23 Illinois Class were entitled to be compensated according to the applicable minimum wage for all hours worked.

159. Defendant failed to compensate Plaintiff Vaughn and the Rule 23 Illinois Class members for the applicable minimum wage for all hours worked.

160. Defendant's failure and refusal to pay the applicable minimum wage for all hours worked was a violation of the minimum wage provisions of the IMWL, 820 ILCS § 105/4(a).

161. 820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

162. Plaintiff Vaughn and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

## COUNT V
### (On Behalf of the Rule 23 Illinois Class)
### VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### ("IWPCA"), §§ILCS 115/1, *et seq*
### FAILURE TO TIMELY PAY ALL WAGES EARNED

163.   Plaintiff Vaughn re-alleges and incorporates all previous paragraphs herein.

164.   At all times relevant to the action, Defendant was an employer covered by the mandates of the IWPCA, and Plaintiff Vaughn and the Rule 23 Illinois Class were employees entitled to the IWPCA's protections. *See* 820 ILCS 115/2.

165.   Pursuant to 820 ILCS 115/4, Plaintiff Vaughn and the Rule 23 Illinois Class were entitled to be compensated for all wages earned during a semi-monthly or bi-weekly pay period not later than 13 days after the pay period, and compensated for all wages earned during a weekly pay period no later than 7 days after the pay period.

166.   Defendant's failure to fully compensate Plaintiff Vaughn and the Rule 23 Illinois Class for all wages earned violated the IWPCA.

167.   820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the IWPCA "shall be entitled to recover …the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover

costs and all reasonable attorney's fees."

168.    Plaintiff Vaughn and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IWPCA at an amount to be proven at trial.

**COUNT VI**
**(On Behalf of the Rule 23 Class)**
**BREACH OF CONTRACT**

169.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

170.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

171.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiffs and the Rule 23 Nationwide Class members.

172.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the

unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the donning/doffing activities described herein.

173.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each Rule 23 Nationwide Class member.

174.    Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

175.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members have been damaged in an amount to be determined at trial.

## COUNT VII
### (On Behalf of the Rule 23 Class)
### UNJUST ENRICHMENT

176.    Plaintiffs incorporate paragraphs 1 through 127 as if fully restated herein.

177.    This Count is pleaded in the alternative to Count III, Breach of Contract.

178.   At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

179.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was paid a base hourly rate.

180.   Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out the work they performed.

181.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the promised base hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant was unjustly enriched.

182.   Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

183.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

184.   Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various

business expenditures.

185.    Defendant was unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiffs and the Rule 23 Nationwide Class procured on behalf of Defendant, without having compensated Plaintiffs for the same.

186.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

187.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member have suffered damages, including, but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on their own behaves and on behalf of the putative FLSA Collective and Rule 23 Classes, requests judgment as follows:

a.    Certifying this case as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

b.    Certifying this action as a class action (for the Rule 23 Pennsylvania Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Pennsylvania state law claims (Count II);

c.    Certifying this action as a class action (for the Rule 23 Illinois Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Illinois state law claims (Counts III-V);

d.    Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to

Plaintiff's breach of contract or unjust enrichment claim (Counts VI-VI);

e.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers and dates and location of employment of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

f.    Designating Plaintiffs as the representatives of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

g.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

h.    Declaring Defendant's violations of the FLSA were willful;

i.    Declaring Defendant violated the Pennsylvania Minimum Wage Act;

j.    Declaring Defendant violated the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act;

k.    Declaring Defendant's violations of state law were willful;

l.    Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class members (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

m.    Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

n.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

o.    Awarding pre- and post-judgment interest to Plaintiff on these damages; and

p.    Awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of all others similarly situated, hereby demand a trial by jury on all issues in this complaint that are so triable as a matter of right.


Date: July 28, 2025                    Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (PA 56887)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
(412) 322-9243
gary@lcllp.com

Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Paulina R. Kennedy (P84790)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
pkennedy@sommerspc.com

*Attorneys for Plaintiffs and the Proposed Collective and Class Members*